**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STREAM COMPANIES, INC.,** | : | **CIVIL ACTION** |
| **Stream,** | : | |
| | : | |
| **v.** | : | **No.: 12-cv-4549** |
| | : | |
| **WINDWARD ADVERTISING, et. al.** | : | |
| **Defendants.** | : | |

## MEMORANDUM AND CERTIFICATION OF FACTS

**LYNNE A. SITARSKI**                                          **DATE: July 17, 2013**
**UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Plaintiff Stream Companies, Inc.'s, Motion for Sanctions (Doc. No. 63), Defendants' Response thereto (Doc. No. 66), Stream's Motion for Contempt (Doc. No. 69), and Defendants' Response thereto (Doc. No. 73). The instant matters were referred to this Court by the Honorable C. Darnell Jones, II, by Orders dated April 1, 2013 and May 3, 2013, for determination. (Doc. Nos. 68, 72). For the following reasons, Stream's Motion for Sanctions will be **GRANTED IN PART.** Further, as more fully set forth herein, and pursuant to 28 U.S.C. §636(e)(6)(B), this Court certifies the facts setting out a prima facie case of Contempt, and orders Defendants Windward Advertising, Michael Cresta, Corey Lorenz, Joe Chambers and Gerry Summers to appear before the Honorable C. Darnell Jones, II , for a hearing to show cause why they should not be held in contempt.

## I.     PROCEDURAL HISTORY

Stream Companies, Inc. ("Stream" or "Plaintiff") initiated this litigation on August 10, 2012, filing a Complaint against Defendants Windward Advertising ("Windward"), Cory Lorenz

("Lorenz"), and Michael Cresta ("Cresta").  (Doc. No. 1).  Subsequently, Stream filed an

Amended Complaint, adding the remaining founding partners of Windward – Joe Chambers and

Gerry Summers – as defendants.  (Doc. No. 39).  In their Complaint, Stream alleges that

Defendants engaged in improper conduct, in violation of the Computer Fraud and Abuse Act

(Count 2), the Copyright Act (Counts 4-6), the Pennsylvania Wiretap Act (Count 3), state trade

secret law (Count 9), and the duty of loyalty (Count 7).  *Id.* at Counts 2-7, 9.  Also on August 10,

2012, Stream filed a Motion for a Preliminary Injunction to enjoin all the Defendants from, *inter*

*alia*, soliciting Stream clients and prospective Stream clients that were identified by Stream as of

the date that Lorenz and Cresta were employed by Stream.  (Doc. No. 2).

On October 23, 2012, Judge Jones referred the case to me for a continuation of the

Preliminary Injunction hearing and for preparation of a Report and Recommendation on

Stream's Motion for Preliminary Injunction.  (Doc. No. 30).   After conducting a Preliminary

Injunction hearing, this Court issued a Report and Recommendation, recommending that

Stream's Motion for Preliminary Injunction be granted.  (Doc. No. 55).  On February 27, 2013,

Judge Jones approved and adopted the Report and Recommendation, and granted Stream's

Motion for injunctive relief.  (Doc. No. 62).

The instant dispute concerns the alleged lack of production of relevant materials,

spoliation of evidence, and violation of Court Orders during the course of this litigation.

Discovery in this matter began on August 13, 2012, when Judge Jones issued an Order

authorizing expedited discovery "for purposes of the parties preparing for a hearing on Stream's

Motion for Preliminary Injunction."  (Doc. No. 5).  The Order also required Defendants to

preserve all evidence relating to the Complaint, and set various discovery deadlines.  *See id.*

After Defendants failed to make initial disclosures and comply with the deadlines of the August 13, 2012 Order, Stream filed a "Motion to Compel Expedited Discovery."[1]  (Doc. No. 6).  On August 21, 2012, Judge Jones granted the Motion and set deadlines for the production of forensic images of electronic devices and cell phone information.  Importantly, Judge Jones warned that failure to comply with the Order would result in a fine of three thousand dollars ($3,000) per day.  (Doc. No. 7).  After Defendants failed to meet several of the discovery deadlines, a conference was held on August 30, 2012, to address various discovery issues, during which Judge Jones issued an oral Order once again requiring Defendants to produce electronic devices for imaging, and again warning them that failure to comply could lead to the imposition of sanctions.  *See* (Doc. Nos 17, 18).  On September 6, 2012, Stream's Counsel confirmed that Stream's forensic consultant had received Lorenz and Cresta's laptops, Cresta's iPhone, and an external hard drive.  *See* (Sophocles Dec. 10, 2012 Letter to J. Sitarski, attached hereto as Ex. 1).

It having been revealed at the preliminary injunction hearings that Defendants had deleted numerous e-mails and failed to produce various electronic devices for imaging, Stream filed the instant "First Motion for Sanctions" on March 12, 2013.  (Doc. No. 63).  Stream asks for the imposition of sanctions for the alleged destruction and/or deletion of materially relevant e-mails, as well as for the deficiencies in the production and imaging of electronic devices.  *See id*.  Additionally, after Defendants failed to turn over any confidential or proprietary information to Stream in compliance with the Court's Preliminary Injunction Order (Doc. No. 62), Stream filed a "First Motion for Contempt."  (Doc. No. 69).

---

[1]  In the motion, Stream detailed their repeated attempts to get Defendants to comply with discovery obligations and deadlines, and also expressed concern that evidence had been spoliated.

Both matters were referred to this Court by Judge Jones, by Orders dated April 1, 2013 and May 3, 2013, for determination. (Doc. Nos. 68, 72). Defendants have responded to both motions. (Doc. No. 66, 73). Accordingly, the matter is now ripe for disposition.

## II.     DISCUSSION

### A.     Stream's Motion for Sanctions

Stream moves for sanctions based on Defendants' conduct during discovery in this matter. Specifically, Stream alleges that Defendants engaged in spoilation of evidence and violated the Court's Orders when they failed to produce the following pieces of evidence:

(1) external storage devices - six thumb drives and one hard drive - used to take hundreds of documents from Stream computers;
(2) the personal computers that Defendants used prior to July 16, 2012;
(3) numerous deleted e-mails pertaining to Stream and Windward;[2]
(4) Lorenz's iPhone and iPad;
(5) Cresta's iPad; and

As more fully discussed herein, to this day, items 1, 2, and 3 from this list have not been produced. Items 4 and 5 above – Cresta's iPad and Lorenz's iPhone and iPad – were finally produced for the first time on May 3, 2013. Accordingly, this Court finds that the deletion of e-mails and the loss of relevant electronic devices (items 1, 2 and 3) are most appropriately analyzed as a spoilation issue, while the extremely late production of certain electronic devices (items 4 and 5) is most appropriately addressed under Federal Rule of Civil Procedure ("Rule")

---

[2] Stream's computer expert, Louis Cinquanto, testified that he was able to recover the subject lines of some deleted e-mails but that the bodies of these e-mails could not be recovered, nor have the totality of deleted e-mails. Cinquanto opines that other emails were deleted in their entirety, and not even the to/from or subject lines could be recovered. N.T. 10/31/12 Cinquanto at 45, 64.

37.[3]

This Court will address the spoliation issues first.

### 1.    Spoliation of Evidence

"Spoliation [of evidence] occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (*citing Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)). "[T]he burden of proof on a spoliation claim lies with the party asserting that spoliation of evidence has taken place." *Williams v. Klem*, No. 07-1044, 2010 WL 3812350, at *2 (M.D. Pa. Sept. 22, 2010) (*citing Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107-08 (3d Cir. 2001)).

---

[3] There are multiple legal bases for potentially sanctioning Defendants' conduct, and we will discuss them separately. *See In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 379 (3d Cir. 1997). Because additional discovery will be undertaken in this matter after a Rule 16 conference with Judge Jones, only evidence that has been totally destroyed and eliminated from this litigation will be analyzed as a spoliation issue. Specifically, the destruction of the e-mails is a spoliation issue that requires spoliation sanctions. The non-production of electronic devices that Defendants contend are lost (six thumb drives, pre-July 16, 2012 computers) is also a spoliation issue.

The non-production of the devices that have since been produced (Lorenz and Cresta's iPad and Cresta's iPhone), arguably present a spoliation issue as well, but also clearly violated the Discovery Orders issued by Judge Jones. Because further discovery is available on these devices before trial, the exact amount of relevant information that remains discoverable on these devices has yet to be determined. Importantly, for the instant motion, the extent of information that has been lost has yet to be ascertained – and thus the magnitude of any prejudice suffered by Stream from the delayed production of these devices – has not yet been fully realized. Accordingly, because the extent of any spoliation has yet to be determined, this Court finds that the appropriate basis for addressing the failure to produce these devices is pursuant to Rule 37 for failure to comply with court Orders. *See Patel v. Havana Bar*, No. 10-1383, 2011 U.S. Dist. LEXIS 139180, at *13-14 (E.D. Pa. Dec. 2, 2011) (addressing non-production and destruction of evidence as spoliation issue separate from the belated production of evidence).

Regarding the first element, all of the non-produced pieces of evidence were in the defendants' exclusive control. For the most part, Defendants do not dispute that they had control of these devices; rather, they attempt to offer reasons for not producing them in this litigation.[4] As to item 1 above (external storage devices), Defendants contend that they have lost all six thumb drives. Cresta denied that he ever used a hard drive, a contention that is belied by forensic evidence that shows that the same hard drive was hooked up to his Stream computer and his personal Windward computer.[5] *See* N.T. 10/31/12 Cinquanto at 34. As to item 2 above (personal computers used by Cresta and Lorenz) Defendants both testified that their pre-July 16, 2012 computers crashed before the relevant time, and then were thrown away. Finally, as to item 3 (deleted emails), Cresta testified the e-mails were deleted by his children and family.

Turning to the second element of the spoliation inquiry, I easily conclude that the unproduced evidence was relevant. The external storage devices used to download documents would enable one to determine the full extent of information and documents that Cresta and Lorenz downloaded from Stream's computers. The personal computers that Defendants used prior to July 16, 2012 also held relevant information; as Cresta and Lorenz were both working to form Windward and compete with Stream at that time. Finally, the deleted e-mails would provide evidence of Cresta and Lorenz's formation of Windward, as well as their use of Stream

---

[4] Defendants testified that they lost or broke the thumb drives, apparently treating them as disposable items "like [cigarette] lighters." N.T. 10/25/12 Cresta at 24; Lorenz at 159-60. While Defendants did produce one thumb drive during discovery, Cinquanto testified that this was not one of the six thumb drives used to download Stream's confidential information. 10/31/12 Cinquanto at 13.

[5] Lorenz produced a "Western Digital" Hard Drive that he used to download a large volume of Stream documents. Cinquanto testified that Cresta used a different hard drive, and this hard drive has not been produced. N.T. 10/31/12 Cinquanto at 34-35.

documents and information.

As to the third element of the spoliation inquiry, there must be an actual suppression or withholding of the evidence. "No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Brewer*, 72 F.3d at 334. At this time, and based on the record before me, this Court can conclude that only the e-mails were "actually suppressed." There is strong evidence of Defendants' intent to delete them. Cinquanto testified that there is a two-step process to delete e-mails from a hard drive, and that Defendants both took the steps to delete relevant e-mails.[6]

As to the pre-July 16, 2012 laptop computers, Cresta and Lorenz both testified that both of these computers "crashed," and they both disposed of them. Stream argues that Defendants' credibility is most questionable. Thus, Stream suggests, Defendants must put forth additional evidence that substantiates their claims of "crashed" laptop computers. *See* (Doc. No. 63-2). This Court declines to require Defendants to further substantiate their testimony.[7] Stream is the party alleging spoliation, and it is their burden to prove that spoliation occurred. *Williams v. Klem*, No. 07-1044, 2010 WL 3812350, at *2 (M.D. Pa. Sept. 22, 2010) (*citing Byrnie v. Town of*

---

[6] Defendants have offered *no* evidence – expert or otherwise – to rebut Cinquanto's explanation of the two-step process for deleting email.

[7] This Court certainly acknowledges that Defendants' testimony that both their computers "crashed" at or the around the same time, and both were immediately disposed of, strains credulity, especially considering their conduct during discovery in this matter. Nevertheless, the record is not yet fully developed, and there is no electronic (or other) evidence that rebuts this explanation. However, this Court notes that discovery is not complete and Stream may continue to take discovery to further develop this claim, at which time the issue may be revisited.

*Cromwell, Bd. of Educ.*, 243 F.3d 93, 107-08 (3d Cir. 2001)). Merely pointing out that Defendants' were not credible in other instances does not suffice to meet their burden. The forensic evidence shows that Defendants new laptop computers were activated on July 13, 2012. As noted below, the duty to preserve did not arise, at the earliest, until July 30, 2012, when Defendants received the cease and desist letter. *See infra* P 8. Stream has not shown any evidence that Defendants used or had possession of their previous laptop computers after they activated their new laptops on July 16, 2012. Accordingly, and on the record before this Court, I cannot conclude at this juncture that the subject laptops were intentionally disposed of for the purpose of destroying evidence. *See Sarmiento v. Montclair State Univesrity*, 513 F. Supp. 2d 72 (D.N.J. 2007) (destruction of evidence that took place before duty to preserve arose not grounds for spoliation sanctions).

Similarly, this Court finds that Stream has failed to establish Defendants' actual suppression of the external storage devices. Other than a cursory attack on Defendants' credibility, Stream has not come forward with any additional evidence or inconsistent testimony showing that Defendants used or possessed the electronic devices at a later date than Defendants claimed. To the contrary, the record is not sufficiently developed on important factual issues concerning how the devices were lost; namely, whether Cresta and Lorenz had possession of the devices after the duty to preserve arose, and whether they failed to produce the thumb drives that were in their possession. Consequently, on the current record, this Court does not find that there is sufficient evidence to establish Stream's engaged in spoliation of the six thumb drives. *See Gentex Corp. v. Sutter*, 827 F. Supp. 2d 384, 390 (D. N. J. 2011) (declining to award spoliation sanctions because issues of fact remained as to whether he actually engaged in spoliation).

While this Court declines to award spoliation sanctions for these devices at this time, the issue is not foreclosed, and the parties may again raise any issues surrounding the discarded laptops and missing external storage devices after further discovery. *See id.* at 391.

Finally, there is no doubt that the duty to preserve the evidence was reasonably foreseeable to Defendants. Defendants were on clear notice to preserve evidence when Judge Jones issued the August 13, 2012 Order requiring Defendants to preserve and produce for imaging personal and work computers, personal and work cell phones, hard drives and e-mails.[8] *See* (Doc. Nos. 5, 7). The forensic evidence of record and Cinquanto's testimony show that Defendants Cresta and Lorenz actively deleted relevant e-mails from their desktops <u>after</u> Judge Jones issued the Order. *See* N.T. 10/31/12 Cinquanto at 45.

Based on the evidence presented by Stream, as well as the testimony at the preliminary injunction hearings, this Court finds that the record contains ample evidence to support the conclusion that Defendants engaged in spoliation of evidence by deleting relevant e-mails. Their inconsistent and non-credible explanations fail to convince this Court otherwise.

### 2. Spoliation Sanctions

Having found that Defendants have engaged in spoliation by deleting relevant emails, this Court must now decide the appropriate sanction to assess. *See Bull*, 665 F.3d at 74 n.5 (noting that whether spoliation occurred, and determining the appropriate sanctions for such spoliation are distinct issues). In determining the appropriate sanctions for spoliation, the court

---

[8] Stream argues that the duty to preserve arose on July 30, 2012, when Defendants received a cease and desist letter notifying them of the potential of litigation. While this may be correct, the Court need not decide the issue, as only the e-mails were found to be spoliated; Defendants were clearly required to preserve the e-mails when Judge Jones issued the August 13, 2012 Order.

looks to the following factors for guidance:

> (1) the degree of fault of the party who altered or destroyed the evidence;
> (2) the degree of prejudice suffered by the opposing party; and
> (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing
> party, and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

Bull, 665 F.3d at 74 (*quoting Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)).  Potential sanctions include: "dismissal of a claim or the entry of judgment in favor of a prejudiced party; the suppression of evidence; an adverse evidentiary inference, such as the 'spoliation inference'; fines; and attorney fees and costs."  *AMG Nat'l Trust Bank v. Ries*, 2011 WL 3099629, at *4 (E.D. Pa. Jul. 22, 2011) (*citing Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 110-11 (E.D. Pa. 2005)).  However, "'[t]here is no rule of law mandating a particular sanction upon a finding of improper destruction or loss of evidence; rather, such a decision is left to the discretion of the Court.'"  *AMG*, 2011 WL 3099629, at *4 (*quoting Paramount*, 234 F.R.D. at 111).

We turn now to the factors to be considered in identifying an appropriate sanction.

### a.    Fault

When evidence is "actually suppressed" there is a strong degree of fault that favors the imposition of sanctions.  *See Brewer*, 72 F.3d at 334.  Importantly, <u>sanctionable</u> spoliation often requires a finding of bad faith.  *See Bull*, 665 F.3d at 79.  Here, the evidence of Defendants fault and bad faith conduct is strong.  Defendants not only failed to preserve the e-mails as required by Court Orders, they actively deleted them.[9]  Additional evidence of bad faith was gleaned from

---

[9]  The August 13, 2012 Order required Defendants to turn off the auto-delete functions on their e-mail accounts.  This Order apparently did not stop Defendants from actively taking two

Cinquanto's analysis of Cresta's internet search history from August 13, 2012 thru August 30, 2012, which showed that he researched "how to delete information from hard drive." *See Mosaid Technologies Inc. v. Samsung Electronics Co.*, 348 F. Supp. 2d 332, 339 (D.N.J. 2004) (finding fault when defendants did not begin preserving evidence until after court Order requiring them to). Given the high degree of Defendants' fault and the fact that they undertook affirmative actions to purposely destroy evidence, this factor weighs heavily in favor of sanctions.

### b. Prejudice

Defendants' spoliation prejudiced Stream. The deletion of relevant e-mails has adversely effected Stream's ability to find and prove the extent of information that Defendants took and shared among themselves. This Court finds that prejudice is more pronounced in this instance, as the actual information taken and how it is used is of significant importance to Stream's trade secret claim. *See Gentex Corp.*, 827 F. Supp. 2d at 391 (finding prejudice in trade secret case for destruction and erasure of computer files, e-mails, thumb drives, and CD-ROMS). Indeed, Cinquanto testified that, while he was able to identify the subject lines of a few deleted e-mails, they had already been irretrievably overwritten and the body of the e-mails could not be found.

Because Defendants' spoliation has resulted in the permanent loss of relevant electronic evidence, and because this destruction has significantly hamstrung efforts to mitigate the harm caused to Stream by Defendants' conduct, this Court finds this factor to weigh in favor of sanctions.

---

affirmative steps to first delete the e-mails from their e-mail accounts and then going into the "trash bin" and deleting the e-mails a second time. N.T. 10/31/12 Cinquanto at 45.

### c.    Proportionality

As noted above, "'[t]here is no rule of law mandating a particular sanction upon a finding of improper destruction or loss of evidence; rather, such a decision is left to the discretion of the Court.'" *AMG*, 2011 WL 3099629, at *4 (*quoting Paramount*, 234 F.R.D. at 111). This Court acknowledges the Third Circuit's mandate to select the least onerous sanction in light of the willfulness of the acts and the prejudice suffered by the opposing party. *See Schmid*, 13 F.3d at 79.

Here, Stream seeks monetary sanctions for Defendants' spoliation. Where spoliation has occurred, monetary sanctions are appropriate in Order to "compensate a party for the time and effort it was forced to expend in an effort to obtain discovery" to which it was otherwise entitled.[10] *Mosaid*, 347 F. Supp. 2d at 339. This Court finds that monetary sanctions are appropriate to compensate Stream for the attorney fees incurred in filing the instant motion, as

---

[10]  Along with compensating the injured party, sanctions for spoliation also serve remedial and punitive functions. *See Mosaid*, 348 F. Supp. 2d at 339. A remedial sanction usually comes into play during trial in order to "level the playing field." Defendants do not seek such sanctions at this time, and acknowledge that the propriety of such sanctions is better left to the time of the final hearing. *See* (Doc. No. 63-2 at 22).

Punitive spoliation sanctions are particularly appropriate when bad faith conduct is present and there is a need for deterrence. This Court easily concludes that the type of spoliation that has occurred in this litigation must be deterred. Defendants are seriously at fault; they actively destroyed evidence that no longer can be retrieved. *See Bull*, 665 F.3d at 74. Moreover, the deterrence value is especially important where, as here, a majority of the important evidence is in electronic form and "a party may destroy its opponents case with the mere click of a button." *Gentex*, 827 F. Supp. at 391. Spoliation sanctions that are more punitive in nature include the more serious sanctions of exclusion of evidence and dismissal of a case. Monetary sanctions for spoliation are not normally given for punitive purposes. *See Mosaid*, 348 F. Supp. 2d at 339 (noting that monetary sanctions are given in addition to other sanctions to compensate a party). Because Stream only requests monetary sanctions at this time, this Court will only award the amount necessary to compensate them "for the time and effort it was forced to expend in an effort to obtain discovery it was entitled to." *Id.* at 33.

well as the attorneys' fees and any other costs incurred in attempts to obtain the destroyed e-mails. *See id; see also Telequest International Corp. v. Dedicated Business Systems, Inc.*, No. 06-5359, 2009 U.S. Dist. LEXIS 19546, at *16 (D.N.J. Mar. 11, 2009) (awarding compensatory monetary sanctions for the destruction of relevant e-mails). Additionally, Stream may be compensated for the expenses incurred for other motions or hearings that were a direct result of the deletion of e-mails (for example, that portion of Cinquanto's fees incurred to establish that emails had been deleted).

Stream currently requests $25,000 in attorney fees and the expenses of filing multiple motions to compel. This Court agrees that Stream is entitled to *some* amount of fees and costs, but is unable to determine on the current record whether $25,000 is appropriate in this instance. Accordingly, Stream shall submit their billing records, and/or an affidavit, within 14 days of this Order setting forth their expenses and fees incurred as a result of Defendants spoliation of e-mails.[11] Defendants shall have seven days thereafter to respond.

### 3. Sanctions for Violation of Court Discovery Orders

Stream seeks sanctions for violations of discovery Orders issued by Judge Jones. Specifically, Stream alleges that Defendants violated the Court's August 13, 2012 Order by affirmatively deleting e-mails. Stream further contends that Defendants violated the Court's August 21, 2012 Order by failing to produce numerous electronic devices.[12] Stream seeks a

---

[11] Of course, the Court recognizes that billing records would be redacted so as to preserve all applicable privileges.

[12] The deletion of e-mails was addressed above as a spoliation issue and this Court intends to award compensatory sanctions, upon receipt and review of information of fees and costs incurred. To the extent Defendants seek additional monetary fines for the violation of the August 13, 2013 Order, such fines may only be assessed pursuant to a finding of contempt, an

variety of sanctions for violations of these Orders, including findings of contempt, the imposition

of monetary fines, and attorney's fees and costs. Defendants argue that sanctions are

inappropriate because they have produced electronic imaging for all electronic devices and did

not wilfully violate any Orders by deleting e-mails.

Rule 37 allows a court to impose sanctions for violations of its discovery Orders. *See*

Fed. R. Civ. P. 37. "The purpose of Rule 37 sanctions is to: (1) ensure that a party will not

benefit from its own failure to comply, (2) serve as a specific deterrent . . ., and obtain

compliance with a particular Order issued, and (3) serve as a general deterrent effect on the case

at hand and on other litigation, provided that the party against whom they are imposed was in

some sense at fault." *Update Art, Inc. v. Modin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988). A

court has broad authority to issue sanctions for failure to comply with discovery Orders.

However, the broad discretion to impose sanctions pursuant to Rule 37 is limited by the

requirements that the sanctions be "just" and that they be "specifically related the particular

claim which was at issue in the Order to provide discovery." *General Insurance Co. of America

v. Eastern Consolidated Utilities, Inc.*, 126 F.3d 215, 220 (3d Cir. 1997) (further quotations

omitted).

Here, Defendants have failed to produce electronic devices in direct contravention of

Judge Jones' August 21, 2012 Order. Specifically, Lorenz failed to produce his iPad and iPhone

and Cresta failed to produce an iPad. Defendants do not dispute that they failed to produce these

devices, and instead explain that they did not "actively hide them." Defendants claim that they

---

issue that is discussed below. *Infra* at P 17-18. Because this Court intends to award Stream
compensation for their fees and costs associated with the deleted e-mails, an analysis of the issue
pursuant to Rule 37 is unnecessary.

did not produce the devices because Stream did not expressly request the devices, even though Stream knew of their existence.  Additionally, Defendants assert that the devices were not relevant because they were not plugged into Stream's computers, and any relevant information they did contain could be obtained from other devices produced.

Defendants' unilateral decision to limit their production of electronic devices for imaging and to exclude several devices was in blatant disregard of the spirit and plain text of Judge Jones' Order.  The Order mandated that they produce images for <u>all</u> electronic devices including "portable devices" and "personal and work phones" by August 27, 2012.  *See* (Doc. No. 5 at ¶¶ 1, 3); (Doc. No. 7 at ¶ 1).  Having found that the non-production of the devices violated the terms of the August 21, 2012 Order, this Court now turns to the appropriate sanction.

 Both monetary and non-monetary sanctions are available under Rule 37.  *See* Fed. R. Civ. P. 37(b)(2); *see also Titus v. Mercedes Benz of N. Am.*, 695 F.2d 746, 749 n.6 (3d Cir. 1982) (noting that sanctions under Rule 37(b)(2)(c) include a warning, the imposition of costs or attorney fees, the dismissal of the suit, or preclusion of claims or defenses).  However, the imposition of sanctions under Rule 37 is not appropriate if the failure to produce was substantially justified or harmless.  *Grider v. Keystone Health Plan Central, Inc.*, 580 F.3d 119, 141 (3d Cir. 2009).

To begin, Defendants excuses are not reasonable and their conduct was not "substantially justified."  The fact that this was their "first litigation" does not give Defendants a pass for discovery violations, especially given the fact that they have had the benefit of counsel throughout this litigation.  *See Mahoney v. Yamaha Motor Corp. U.S.A.*, No. 11-5538, 2013 U.S. Dist. LEXIS 38741, *27 (E.D.N.Y. Mar. 19, 2013) (rejecting inexperience as an excuse to avoid

sanctions). Nowhere in the Order, and at no time thereafter, were Defendants given permission to withhold devices from production that they unilaterally determined did not contain relevant, discoverable information.[13] *See Smith v. Life Investors Ins. Co.*, No. 07-681, 2009 U.S. Dist. LEXIS 112241 (W.D. Pa. Dec. 3, 2009) (rejecting argument that non-production of devices was because of erroneous interpretation of their relevance as "entirely without merit"). Defendants cannot shift the blame for their production failures to Stream. Judge Jones' Order does not limit production and/or imaging of electronic devices to only those that Stream specifically requested. *See Mosaid,* 348 F. Supp. 2d at 336-37 (rejecting argument that sanctions should not be imposed for deficient production when the request didn't expressly request e-mails because they clearly fell within the request).

Moreover, this Court finds further support for the imposition of sanctions because Defendants' decision to withhold the devices was willful. Defendants never notified the Court or Stream that they had decided to withhold certain electronic devices from production. To the contrary, Defendants gave numerous assurances that they had produced all electronic devices. *Cf. Floorgraphics Inc. v. news m. Mktf. In-Store Servs.*, 434 Fed. Appx. 109 (3d Cir. 2011)

---

[13] In any event, Defendants' conclusions as to the relevance of their iPads and Lorenz's iPhone were off the mark. Defendants seem to have concluded that they only needed to produce devices that were attached to Stream's computers for the purpose of downloading Stream information. Such a narrow interpretation of relevance ignores the broad scope of permissible discovery under Federal Rule of Civil Procedure 26. Lorenz testified at the preliminary injunction hearing that he used his iPhone and iPad to open e-mails that he had sent himself containing Stream's documents. Thus, the iPhone and iPad would show the documents Defendants took, and might provide insight as to how they were used. The iPhone also may have shown Lorenz's text message exchanges with the other Windward partners and defendants (i.e. Joe Chambers, Gerry Summers) and provide further clarity of the events leading to Windward's formation. Indeed, every device that Defendants produced contained a large amount of relevant and discoverable information. Defendants' contention that they did not think Lorenz's iPhone and their iPads would not contain relevant information is simply not credible.

(finding no willfulness by distinguishing from cases where the parties response misled movant into thinking there was nothing else responsive).  In fact, the existence of the non-produced devices was only brought to the Court's and Plaintiff's attention at the Preliminary Injunction hearing.  For example, the existence of Lorenz's non-produced iPhone and iPad came up during his testimony at the Preliminary Injunction hearing, in which he testified as to his practice of e-mailing himself Stream documents:

| | |
|---|---|
| Counsel: | . . . I'll forward an e-mail that I just got about it, and then when I'm at home that will remind me I need to work on that at home, right?  That's the idea? |
| Lorenz: | Not exactly work as more as study, if there was a document, you know, documents distribution lists, whatnot, that we, you know, through your forensic imaging I'm hoping you found how many emails I received in one day at Stream. |
| | It was tough to keep up with all the requests and all of the things that I was able–that I was supposed to review, or thought that I should review.  And so I would, towards the end there when I said things were getting busier, I would email myself specific things to read at home either on my iPhone, which also had my Stream email come up, and my Gravity e-mail. |
| | And my Yahoo and Gmail account.  It was just easier for me to read that either on my iPad or cell phone. |
| Counsel: | A couple of interesting things there, Mr. Lorenz |
| Lorenz: | Sure. |
| Counsel: | So you have an iPhone?  Was that produced for imaging? |
| Lorenz: | No, it was not |
| Counsel: | And you have an iPad? |
| Lorenz: | I do |
| Counsel: | When did you get that? |
| Lorenz: | It was given to me by Stream Companies as a gift. |

Counsel:         Okay. Was that produced for imaging?

Lorenz:          No.

N.T. 10/25/2012 Lorenz at 176-177. Judge Jones Order was clear and unambiguous. Yet, as Lorenz' testimony makes abundantly clear, Defendants withheld devices, even after having been explicitly advised of the potential consequences. *See Farifield Fin. Mortg. Group v. Luca*, No 06-5962, 2008 U.S. Dist. LEXIS 94159, at *19-20 (E.D.N.Y., Nov. 19, 2008) (noncompliance with discovery Orders willful when Order is clear, party understood them, and non-production not due to circumstances beyond defendants' control) (internal citations omitted).

In sum, Defendants engaged in sanctionable conduct by failing to produce Lorenz's iPhone and iPad, and Cresta's iPad. This conduct was not substantially justified or harmless. Consequently, Stream is entitled to the "reasonable attorney fees and costs" that they incurred as a result of Defendants conduct. Here, Stream seeks $25,000 in attorneys' fees and costs. (Doc. No. 63-3). On the record now before me, this Court cannot determine the appropriateness of this amount. As set forth above, Stream is to submit an affidavit and/or billing records, detailing the fees and costs expended in pursuing this issue.

Stream also seeks to recoup certain forensic examination costs. Specifically, they seek to recover the payments for Cinquanto's examination of the devices that were produced, and the costs of any future forensic examinations (for the devices that were recently produced). As to the past computer forensic examination costs, Stream has not explained how these costs arose from Defendants' failure to produce these three devices. This Court declines to award these costs, as they would have been incurred regardless of the sanctionable conduct. As to the payment of any future forensic imaging, this Court finds that an award of such costs is

appropriate.  Windward and it's partners failed to produce the devices; the recent production of

forensic images is lacking in substantial forensic data and is insufficient.  N.T. 5/29/13

Emmerich at 10-11; *see also Mosaid*, 348 F. Supp. 2d at 339 (rejecting attempt to avoid

sanctions because of "recent efforts" to cure earlier deficiencies).  Therefore, given Defendants'

consistent inability to comply with the Court's discovery Orders and their inexcusable delay in

producing these devices, Defendants shall pay for the costs of imaging these three devices once a

Rule 16 conference is held by Judge Jones.[14]  *See Tracinda Corp. v. DaimlerChryslyer AG*, 502

F.3d 212, 242 (3d Cir. 2007) (movant entitled to fees for late production that prejudiced trial

preparation strategy and ability to develop case).

　　　　Finally, given that their conduct was willful, additional non-monetary sanctions may be

appropriate under Rule 37.[15]  *See* Fed. R. Civ. Pro. 37 (attorney's fees and costs may be given "in

---

[14] Defendants have produced electronic images of Cresta's iPad and Lorenz's iPhone and iPad in "PDF" format.  Plaintiff asserts that this production is not sufficient, as it does not allow for independent analysis to determine what electronic devices were inserted into computers, what documents were downloaded at certain times, and whether additional files were deleted. Given Defendants conduct during discovery in this matter along with the claims asserted against them, the need to be able to identify and analyze hidden, deleted and/or encrypted data is obviously paramount.  While the Federal Rules contemplate that lawyers for the parties will meet and agree on the appropriate format for production, *See* Fed. R. Civ. Pro 34, this Court recognizes its responsibility to ensure the "just, speedy, and inexpensive determination of every action."  Fed. R. Civ. P. 1.  Accordingly, Defendants shall pay for the costs associated with producing electronic forensic images in an appropriate format that allows for meaningful independent analysis by Plaintiff's expert.  *See National Union Elec. Cor. v. Matsushita Elec. Indus. Co.*, 494 F. Supp. 1257 (E.D. Pa. 1980) (ordering production of documents in format that allowed movant to effectively analyze computer data).  Finally, the parties shall continue to employ the necessary safeguards for protecting privileged information.

[15] Stream has not requested any non-monetary sanctions that are available under Rule 37 and have stated that they will wait to the hearing to make such a request.  This Court notes that such sanctions can be issued in addition to fees and costs.  Given that Stream has not requested them and Defendants have not had an opportunity to respond to such requests, this Court declines to address the issue of appropriate non-monetary sanctions at this time.

addition to" other sanctions under this subsection).

### 4. Contempt

Stream seeks additional monetary violations above their reasonable expenses and fees. Specifically, for the failure to produce the electronic devices in violation of the Court's August 21, 2012 Order, Stream seeks to impose the $3,000 per day fine that the Order warned would be imposed should Defendants fail to abide by it. Stream also seeks to fine each Defendant $7,500 for deleting e-mails as punishment for violating the Court's August 13, 2012 Order requiring the preservation of electronic evidence.[16]

Monetary sanctions in the form of fines are not expressly made available pursuant to Rule 37. *Martin v. Brown*, 63 F.3d 1252, 33 (3d Cir. 1995) (upholding sanction of fees and costs but vacating fines because it wasn't "reasonably related to the costs of discovery"). However, Rule 37(b)(2) provides that a Court may hold a party in contempt as a remedy for violation of its Order. *See id.* Importantly, a court may impose fines as a punishment for contempt. *Tom James Co. v. Morgan*, 141 Fed. Appx. 894, 899-900 (11th Cir. 2005). Thus, the monetary fines that Stream seeks <u>may</u> be awarded if Defendants' conduct constitutes civil contempt.

The contempt authority of this Court is more limited than the authority to issue monetary sanctions for fees and costs. Accordingly, the issue of contempt is addressed separately below.

### B. Stream's Motion for Contempt of Court's Orders

---

[16] Stream also seeks monetary fines for the failure to produce portable electronic devices and the failure to produce the pre-July 16 laptops. As noted above, this Court cannot find that Defendants have engaged in spoliation of these devices at this time. Accordingly, Defendants motions are DENIED without prejudice to revisit the issue at a later time.

Stream has requested that Defendants be held in Civil Contempt on the following

grounds:[17]

> 1.  Deletion of e-mails in violation of the Court's August
> 13, 2012 discovery Order.
>
> 2.  Failure to produce relevant electronic devices in
> violation of the Court's August 21, 2012 Order.
>
> 3.  Failure to abide by the Preliminary Injunction Order and
> Motion for Reconsideration.

### 1.      The Magistrate Judge's Role in Contempt Proceedings.

This Court must first determine the proper scope of its authority to address Defendants

alleged contemptuous conduct.  "Magistrate judges are granted contempt authority by statute."

*Wallace v. Kmart Corp.*, 687 F.3d 86 (*citing* 28 U.S.C.S. Section 636(e)).  When, as here, an

alleged civil contempt takes place outside of the Magistrate Judges presence and the Magistrate

Judge is not acting pursuant to the consent provisions of 636(c), section 636(e)(6)(B) sets forth

the applicable authority and procedure:[18]

> The magistrate judge shall forthwith certify the facts to a district
> judge and may serve or caused to be served, upon any person whose

---

[17]  Stream requested that Defendants be found in contempt for violating the discovery
Orders (acts 1 and 2 above) in their Motion for Sanctions.  (Doc. No. 63).  Stream filed a
separate Motion for Contempt for violation of the Court's preliminary injunction Order.  (Doc.
No. 69).

[18]  The instant contempt motions were referred to me pursuant to § 636(b)(1).  *See* (Doc.
Nos 68, 72).  Therefore, because Defendants acts are alleged to constitute civil contempt and
because the matter was referred to me under § 636(b), the applicable subsection is §
636(e)(6)(B)(iii).  *See  Kiobel v. Millson*, 592 F.3d 78*,* 89-90 (2nd Cir. 2010) (J. Cabanes
concurring) ("Section 636(e)(6)(B)[(iii)] explicitly provides that, if the <u>contumacious conduct</u>
does not occur in the magistrate judge's presence, the issue must be referred to the district
judge.").

behavior is brought into question under this paragraph, an Order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

28 U.S.C. §636(e)(6)(B); *see also Cato Corp. v. L.A. Printex Indus.*, 2012 U.S. Dist. LEXIS 161074 (W.D.N.C. Nov. 9, 2012) (noting that in non-consent cases wherein a civil contempt occurs, 636(e)(6)(B) applies and a Magistrate Judge only certifies the facts). The Third Circuit has suggested that the language of 28 U.S.C. § 636(e) "appears to contemplate a procedure in which the magistrate judge's certification of facts merely notifies the district court judge of the alleged contempt." *Taberer v. Armstrong World Indust.*, 954 F.2d 888, 903 (3d Cir. 1992). "Thus, under the statute, the magistrate judge's certification of facts seems designed to serve the function of a charging instrument or pleading for a trial to be held before the district judge." *Id.* Once the facts are certified, "[t]he statute clearly specifies that the Order to show cause shall require the alleged contemnor to appear before a judge of the district court, who hears the evidence . . . and decides whether to impose punishment." *Id.*

The Magistrate Judge's role is not to issue an Order of contempt, but "'to determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt.'" *Hunter TBA, Inc. v. Triple v. Sales*, 250 F.R.D. 116, 118 (E.D.N.Y. 2008) (*quoting Church v. Steller*, 35 F. Supp. 2d 215, 217 (N.D.N.Y. 1999)); *Gomez v. Scoma's Inc.*, No. 9404452, 1996 WL 723082, at *3 (N.D. Cal. Dec. 2, 1996) (a magistrate judge's duty "is simply to investigate whether further contempt proceedings are warranted, not to issue a contempt Order"). The Magistrate Judge, however, may decline to certify the facts if the moving party

cannot adduce sufficient evidence. *See Hunter*, 250 F.R.D. at 118.

"Proof of contempt requires a movant to demonstrate '(1) that a valid Order of the court existed; (2) that the defendants had knowledge of the Order; and (3) that the defendants disobeyed the Order.'" *F.T.C. v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010) (*quoting Marshak v. Treadwell*, 595 F.3d 478, 485 (3d Cir. 2009)). These elements must be proven by clear and convicting evidence. *Id.* (*quoting John T. v. Del. County Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003)). As fully set forth in the certifications of facts below, this Court finds that Stream has met its burden.

### 2. Contempt for Violation of Court's Discovery Orders

The undersigned hereby certifies the following facts relating to the issue of whether Defendants are in contempt of court for failure to comply with Judge Jones' August 13, 2012 and August 21, 2012 Orders:[19]

1. On August 13, 2012, Judge C. Darnell Jones II issued an Order, directing that Defendants preserve evidence, including e-mail exchanges, phone exchanges, computer hard-drives and social media electronic information. Doc. No. 5. Additionally, Defendants were ordered to terminate the auto-delete functions on their e-mail accounts, cell phones, and computer hard drives, and to obtain electronic forensic imaging of various electronic devices in their

---

[19] The facts certified were found by this Court during the evidentiary hearings on Stream's Motion for a Preliminary Injunction. At that hearings, Defendants were given an opportunity to explain their conduct. Upon certification, the district court must make its own findings – based on evidence that is presented to them – as to whether the Stream's proffered reasons for deleting e-mails and failing to produce devices are acceptable. This Court does not find that Defendants have provided an acceptable explanation for their conduct. Consequently, we find that Stream has met its prima facie burden and we are bound to follow the certification procedure under 636(e). *See Lincoln Nat'l Life Ins. Co. v. Marchiol*, No. 11-2855, 2012 U.S. Dist. LEXIS 186404 (D. Colo., Feb. 22, 2013) (magistrate may hear explanation for contemptuous conduct but, if they are not satisfied with the explanation, may do no more then certify facts to the district court for a de novo hearing).

possession.  *Id.*

2.  Cinquanto testified that after the August 13, 2012 Order, both Cresta and Lorenz took active steps to delete relevant e-mails.  N.T. 10/31/12 Cinquanto at 45.  Cinquanto noted that in order to delete e-mails, one had to take two active steps; first deleting the e-mail generally and then going into the trash bin and deleting those e-mails from the trash bin.  *Id.*  Once e-mails are deleted from the trash bin, they will be overwritten by the computer.  *Id.*  If e-mails are only partially overwritten, forensic imaging will be able to recover evidence limited to the e-mail subject line, and the body of the e-mail will not be recoverable.  *Id* at 46.  Cinquanto testified that he was able to recover several e-mails with subject lines of Stream or Windward.  *Id.*

3.  Plaintiff's Preliminary Injunction Exhibits 41 and 42 are representative of e-mails deleted by Cresta.  Exhibit 41 contains e-mails Cresta deleted after the Court's August 13, 2012 Order. These e-mails contain subject lines such as Rafferty Deck, Rafferty PPT, Stream, Additional Scripts, Stream Companies, Inc. v. Windward Advertising, et al., "what's the word," Stream v. Windward, Change of Current Copy-Rafferty Subaru, Rafferty Inquirer-Sept, and Rafferty Subaru Adwords PPC.  Pl Ex. 41.  These e-mails are dated between August 15, 2012 and August 30, 2012.  Cinquanto couldn't be sure if he recovered all of the e-mails, and could not read the body of many e-mails because they had already been overwritten by the time he did his imaging. N.T. 10/31/12 Cinquanto at 46.  Nevertheless, it is clear Cresta took active steps to delete e-mails, in contravention of the Court's August 13, 2012 Order.  Cinquanto further testified that, based upon his examination of the internet history and the types of files on Cresta's Windward computer, he did not find evidence that it was being used by Cresta's family.  N.T. 10/31/12 Cinquanto at 47-49.

4.  On August 21, 2012, Defendants were ordered to produce documents by August 21, 2012, after Stream filed a Motion to Compel.  Doc. No. 7.

5.  In examining Cresta's computer, Cinquanto reviewed Cresta's internet history from August 13, 2012 through August 30, 2012.  N.T. 10/31/12 Cinquanto at 54.  Cinquanto found that Cresta had actively researched how to delete a hard drive or delete information from a hard drive.  *Id.*

6.  Lorenz also failed to produce his iPhone and iPad for imaging.  Lorenz admitted he used his iPad to open e-mails containing Stream documents that he sent to his private account from his Stream account.  Lorenz admits he never produced his iPhone or iPad for imaging.  N.T. 10/25/12 Lorenz at 195.  Lorenz testified that these were not produced pursuant to the August 13, 2012 Order because "this is my first litigation."  *Id.*

7.  Cresta failed to produce the hard drive he connected to his Stream computer.  Cresta denied ever using a hard drive.  N.T. 10/25/12 Cresta at 26.  This testimony is belied by other credible evidence of record.  Forensic evidence showed that Cresta had hooked up the same Western Digital 500 hard drive to both his Stream and Windward computers.  N.T. 10/31/12 Cinquanto at 34-35.

### 3.   Contempt for Violation of Court's Preliminary Injunction Order

Stream has also filed a "Motion for Contempt" alleging that Defendants are in contempt of the February 27, 2013 Preliminary Injunction Order (Doc. No. 62).  *See* (Doc. No. 69 at 5). Specifically, Stream alleges that Defendants have not complied with ¶ 5 of the Preliminary Injunction Order which required Defendants to "return any confidential and proprietary information in their possession or control, in whatever form that information exists, that belongs to Stream, including but not limited to physical and electronic documents and copies thereof."[20] Doc. No. 62, ¶ 5.  Defendants counter that they have substantially complied with the Preliminary Injunction by: (1) physically returning two iPads, two iPhones, and two laptop computers owned and used by Cresta and Lorenz at Windward, and (2) sending fully imaged electronic data to counsel for Stream's as part of full imaging of all available electronic devices.  (Doc. No. 73 at 2-3).  Judge Jones referred Stream's Motion to this Court pursuant to 28 U.S.C. § 636(b)(1) by Order dated May 3, 2013.  (Doc. No. 72).

On May 29, 2013, this Court held a preliminary "show cause" hearing to determine whether Stream has produced sufficient evidence to establish a prima facie case such that this Court could certify the instant matter to the District Court.  Upon consideration of the evidence and arguments set forth at the hearing, this Court finds that Stream has met their prima facie burden.  Accordingly, the undersigned certifies the following facts pertaining to allegations that Defendants are in contempt of the February 27, 2013 Preliminary Injunction Order:

---

[20]   Stream also alleges that Defendants are in violation of ¶ 4(a) of the Preliminary Injunction Order.  *See* (Doc. No. 69 at 10).  Stream points to Defendants Motion for Reconsideration wherein they asked the Court for permission to provide services to an additional thirty-one clients.  Evidence and testimony by Lorenz at the show cause hearing also pertains to this allegation as detailed in the certified facts.

1. On February 27, 2013, Judge C. Darnell Jones II issued a Preliminary Injunction Order, <u>immediately</u> enjoining Defendants from "soliciting advertising business from any entity or person other than Rafferty Subaru, Center for Resolutions, Warwick Jewelers, Armen Cadillac, Jeff D'Ambrosio, and the O'Reillys' . . . " (Doc. No. 62 at ¶ 4(a)). Additionally, Defendants were required to "return any confidential and proprietary information in their possession or control, in whatever form that information exists, that belongs to Plaintiff, including but not limited to physical and electronic documents and copies thereof." *Id.* at ¶ 5.

2. Defendant Lorenz testified at the "show cause" hearing about Windward's actions after the February 27, 2013 Order was issued. His testimony shows that Windward had knowledge of the Preliminary Injunction Order and continued to contact enjoined clients after the Order. Lorenz testified that he began "winding down" certain relationships and projects with entities formed prior to the Order because of Windward's concern for the ramifications of terminating projects that were half-way completed. N.T. 5/29/13 at 51-52, 63. Lorenz testified that "winding down" entailed finishing up some projects that Windward had begun prior to the February 27, 2013 Order and referring clients to other developers for their future needs. *See e.g. id.* at 63, 70.

3. Lorenz testified that he also stayed on as a consultant for a project done for the Chambers Group. *Id.* at 60. For most clients that Windward was enjoined from soliciting, Lorenz represented that the relationship formally ended in April. However, on cross-examination, Lorenz acknowledged that Windward had written the content for a website for pre-February 27 client MPC through May 5, 2013. *Id.* at 65, *see also* Show Cause Hearing Exhibit D-3 (attached hereto as Exhibit 3).

4. Lorenz represented that Windward did not accept any fees for clients outside of those specified in the Preliminary Injunction Order. *Id.* at 71. Lorenz testified that he believed Windward was in compliance with the February 27, 2013 Order enjoining them from solicitation because he interpreted "solicitation" as earning money from new clients.[21] *Id.* at 63

---

[21] Because the process for contempt requires Judge Jones to make his own credibility findings based on evidence presented to him, this Court does not include our credibility findings relating to Lorenz's testimony at the show cause hearing. The details of Lorenz's testimony are certified to the District Court because this Court finds that they show Windward had knowledge of the Preliminary Injunction Order, but continued to keep relationships with certain prohibited clients.

This Court also notes that Lorenz's testimony is also relevant to the asserted defense of "substantial compliance" and Defendants' good faith efforts to comply with the Order. This Court's analysis is limited to whether Stream has established a prima facie case to enable certification of facts. Therefore, we do not address the affirmative defense of substantial compliance. *See FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, 591, n. 18 (3d Cir. 2010) (substantial compliance is not a defense to the <u>elements</u> of civil contempt but is an affirmative defense).

5. Show Cause Hearing Exhibit D-1 (attached hereto as Exhibit 3) is an e-mail between Lorenz and Windward partner Joe Chambers. The e-mail shows that Chambers was performing work for a prohibited entity (Planet Fitness) after the Court's February 27, 2013 Order. *See also* N.T. 5/29/13 Lorenz at 52. Despite the Order, Chambers asked Lorenz if he could finish "one last thing" for this entity. *See id.*

6. Stream's counsel represented that after a week passed from the Order's issuance, Stream's counsel contacted Defense counsel inquiring into their compliance with the Order. N.T. 5/29/13 Sophocles at 33. On March 12, 2013, Stream filed a "First Motion for Sanctions" in which they sought various sanctions for discovery infractions. (Doc. No. 63). Additionally, Stream once again raised their concern that Defendants had not yet complied with the Preliminary Injunction Order by returning confidential and proprietary information to them. (Doc. No. 63-2 at 4 n. 4).

7. On March 14, 2013, Defendants filed a Motion for Reconsideration of the Preliminary Injunction Order in which they requested that they be able to perform "electronic remediation" of the electronic devices that contained the confidential information in lieu of returning the actual physical devices to Stream. (Doc. No. 64). This motion shows that Defendants had knowledge of the Preliminary Injunction Order and the requirement to return confidential information. *Id.*

8. On April 1, 2013, Judge Jones denied the Motion for Reconsideration, noting that electronic remediation of files would violate the Orders directing Defendants to preserve such evidence. For the second time, Defendants were put on notice of the requirement to return confidential information to Stream. Nevertheless, they did not return anything to Stream during the next month.[22]

9. On April 3, 2013, Defendants sent a letter to certain valued customers with whom they still had a relationship. (Attached hereto as Ex. 4). The letter stated as follows:

> Due to unfortunate circumstances, Windward Advertising will not be able to continue business with your organization after April 2, 2013. Any projects that were started prior to April 2, 2013 will be completed by Windward at no charge to you. We here at Windward have enjoyed working with you and will reach out at a time when circumstances have changed. Please feel free to call any member of the Windward management team with any questions you might have. Thank you for your understanding.

---

[22] Defendants did not seek to have the matter stayed, thus the filing of the Motion for Reconsideration did not relieve them of their responsibility to comply with the Order. *See United States v. Garden Homes Mgmt. Corp.,* 104 Fed. Appx. 796, 799 n.3 (3d Cir. 2004).

10.  On April 22, 2013, Stream filed the instant Motion for Contempt of the Preliminary Injunction Order.  (Doc. No. 69).  Stream filed the motion after Defendants failed to return any of Stream's confidential information as required by the Preliminary Injunction Order, and reiterated by Judge Jones' Order denying the Motion for Reconsideration of the Preliminary Injunction Order.

11.  On May 3, 2013, Defendants returned two iPad's, 2 iPhones, and 2 laptop computers to Plaintiff's counsel.  At the show cause hearing, Defendants represented that they had returned all confidential information in their possession aside from a Western Digital Hard drive that Lorenz and his wife co-owned.  The hard-drive is in Defense counsel's possession and counsel for both parties have agreed on a course of action in regards to the hard drive.[23]  Defendants did not produce any physical copies of Stream information or documents.   Defense counsel represented that no physical copies of documents containing Stream information were made.


## III.    CONCLUSION

For the foregoing reasons, this Court finds that Defendants engaged in spoliation of evidence by deleting relevant e-mails and further finds that compensatory monetary sanctions are warranted.  Additionally, Defendants' violated the Court's discovery orders by failing to produce and image relevant electronic devices, and monetary sanctions are warranted under Federal Rule of Civil Procedure 37.  Stream shall submit their billing records, and/or an affidavit within 14 days of this Order setting forth their expenses and fees incurred as a result of: (1) Defendants spoliation of emails, and (2) Defendants late and deficient production of two iPads and one iPhone.  Defendants shall have seven days thereafter to respond.

Finally, this Court finds that Stream has established a prima facie case of Contempt of the discovery Orders and the Preliminary Injunction Order and thus certifies the underlying facts to

---

[23]  Additionally, in late April, Defendants bought one new laptop.  Counsel for both parties have also agreed on a course of action for the laptop.  Windward shall turn over their laptop to Stream so that Stream's consultant may see what files were uploaded to the new computer and determine if any of them contain Stream information.  After that, the new laptop will be returned to Defendants.

the District Court for a de novo hearing and determination.

Accordingly, Stream's Motion for Sanctions will be **GRANTED in PART and DENIED in PART,** and pursuant to 28 U.S.C. §636(e)(6)(B), this Court certifies the facts constituting a prima facie case of Contempt and orders Defendants Windward Advertising, Michael Cresta, Corey Lorenz, Joe Chambers and Gerry Summers to appear before the Honorable C. Darnell Jones, II , for a hearing to show cause why they should not be held in contempt.

An appropriate Order follows.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE